UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

FERNANDO JOSEPH,

                              Plaintiff,

            -against-

CITY OF NEW YORK, POLICE OFFICER KEVIN
HANIFF, SHIELD NO. 1871, POLICE OFFICER JOEL
CUMMINGS, POLICE OFFICER DELISA BROWN,
SERGEANT GESNER CHARLES,

                              Defendants.

---------------------------------------------------------------------- x

**FIRST AMENDED
COMPLAINT AND
JURY DEMAND**

Docket     No.     13CV1295
(SLT)(RM)

ECF CASE

Plaintiff Fernando Joseph, by his attorney Cynthia H. Conti-Cook, of Stoll, Glickman &
Bellina, LLP, for his complaint against defendant New York Police Department officers,
alleges as follows:

PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff seeks relief through 42 U.S.C.
§1983 and 42 U.S. §1988 for the violation of his civil rights protected by the Fourth and
Fourteenth Amendments, in addition to violations of the laws and Constitution of the
State of New York.

2.    The claim arises from a December 17, 2011 incident in which defendants,
acting under color of state law, pulled Mr. Joseph over for a traffic violation. After
throwing a traffic ticket at Mr. Joseph for improper headlights, defendants jumped out of
their patrol car, which lurched into Mr. Joseph's back bumper, causing damage.
Defendants then decided to arrest Mr. Joseph for disorderly conduct and resisting arrest,
in addition to the traffic violation. After Mr. Joseph was in handcuffs, defendant Haniff
punched Mr. Joseph in the face, his partner pushed him onto the ground and a female

officer sprayed mace in Mr. Joseph's face after he was handcuffed and face down on the ground. He spent approximately 24 hours going through the system. He was acquitted at a bench trial in November 2012, after appearing in court approximately 8 times. He was suspended from his part-time job as a custodian for the Department of Education during the time that his case was pending.

3.    Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper. OTHER PARTICULAR DAMAGES?

JURISDICTION

4.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5.    The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6.    The amount in controversy exceeds $75,000.00 excluding interest and costs.

VENUE

7.    Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

PARTIES

8.    Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9.    The City of New York (or "the City") is a municipal corporation organized

under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10. Police Officer Haniff was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Haniff was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Haniff was under the command of the 71st precinct on the date of the incident. While an officer at the 71st precinct, Haniff's supervisors failed to train, supervise, discipline and control Haniff. On information and belief, at all times relevant hereto, Defendant Haniff was under the command of the 71st precinct and is sued in his individual capacity.

11. Police Officer Cummings was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Cummings was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Cummings was

under the command of the 71st precinct on the date of the incident. While an officer at the 71st precinct, Cummings' supervisors failed to train, supervise, discipline and control Cummings. On information and belief, at all times relevant hereto, Defendant Cummings was under the command of the 71st precinct and is sued in his individual capacity.

12.    Police Officer Delisa Brown was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Brown was involved in the use of force against Mr. Joseph. Upon information and belief, defendant Delisa Brown was under the command of the Impact on the date of the incident. While an officer at the Impact, Brown's supervisors failed to train, supervise, discipline and control Brown. On information and belief, at all times relevant hereto, Defendant Brown was under the command of the Impact precinct and is sued in her individual capacity.

13.    Sergeant Gesner Charles was, at all times here relevant, a sergeant of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Sergeant Gesner Charles was involved in the decision to arrest and use force against Mr. Joseph. Upon information and belief, defendant Sergeant Gesner Charles was under the command of the Patrol Borough Brooklyn South on the date of the incident. While a sergeant at the Patrol Borough Brooklyn South, Sergeant Gesner Charles' supervisors failed to train, supervise, discipline and control Brown. On information and belief, at all times relevant hereto, Defendant Sergeant Gesner Charles was under the command of the Impact precinct and is sued in his individual capacity.

4

14.   At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

### NOTICE OF CLAIM

15.   Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller.  Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

### FACTUAL CHARGES

16.   On December 17, 2011, at approximately 7:00 p.m., Mr. Joseph was driving from his house to his aunt's house down Empire Boulevard in Brooklyn, New York.

17.   He had taken his car to the mechanic earlier to fix a headlight and learned that an electrical shortage was causing the headlight to work sometimes and not work other times.

18.   When defendants pulled Mr. Joseph over, he tried to explain this to defendant Haniff, after producing his license, registration and proof of insurance, which were all valid.

19.   Defendant Haniff tossed Mr. Joseph's paperwork through his car window, along with a ticket for improper headlights. He rudely responded to Mr. Joseph's explanation to the effect of "I don't want to hear it".

20.   Mr. Joseph reorganized his paperwork and could not find his license.

21.   He stepped out of the car with his hands raised, palms facing the officers, and slowly approached the officer's driver's side.

22.   Haniff rolled down his window and Mr. Joseph asked where his license was.

23.   Haniff, again rudely, responded that he doesn't know where Mr. Joseph's license is, that he gave him everything already.

24.   Mr. Joseph, still standing in the vicinity of the patrol car, then saw his license on the ground outside his car door and turned to walk back towards his car. He said to Haniff something to the effect of "you don't have to throw my papers like that and treat me like a dog!"

25.   Haniff then kicked his driver's side door open and jumped out of the car, which was not in park.

26.   The patrol car lurched forward and struck Mr. Joseph's car.

27.   Haniff got back in the car and reversed it, and instructed his partner Joel Cummings to arrest Mr. Joseph. His partner put Mr. Joseph in handcuffs, Haniff punched him and his partner Joel Cummings pushed him on the ground. A female officer, Delisa Brown, who arrived at the scene later, maced Mr. Joseph while he was face down on the ground in handcuffs.

28.   Haniff and his partner, Joel Cummings then threw Mr. Joseph into the patrol car and drove him to the 71st precinct.

29.   EMS came to the precinct and examined Mr. Joseph regarding the mace and pain to his arm and head.

30.   Defendants fabricated charges of disorderly conduct and resisting arrest.

31.   Mr. Joseph was put through the system and arraigned on those charges.

32.   After he was released, he went to the emergency room at SUNY Downstate for pain to his arm, head and face. He was given a follow up appointment at the eye clinic,

which he went to.

33.    We went back and forth to court until November 2012, when a judge acquitted him after a bench trial.

34.    Mr. Joseph filed a complaint with the Civilian Complaint Review Board.

35.    He was suspended from his part-time job as a custodian for the Department of Education during the time that his case was pending.

36.    For several months following the incident, Mr. Joseph was afraid of driving.

37.    At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.   They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

38.    During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

DAMAGES

39.    As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

   a.    Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

   b.    Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

c.     Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d.     Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

e.     Physical pain and suffering;

f.     Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

g.     Loss of liberty;

h.     Lost wages; and

i.     Property damage.

## FIRST CAUSE OF ACTION
### Defendants Falsely Arrested and Falsely Imprisoned Plaintiff Under 42 U.S.C. § 1983

40.   The above paragraphs are here incorporated by reference.

41.   The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

42.   The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

43.   At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

44.   Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

45.   At all times, the unlawful, wrongful, and false arrest and imprisonment of

plaintiff was without basis and without probable cause or reasonable suspicion.

46.  All of this occurred without any illegal conduct by plaintiff.

47.  Plaintiff was acquitted at trial.

48.  The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

49.  As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

50.  The above paragraphs are here incorporated by reference.

51.  The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

52.  The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

53.  At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

54.  Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

9

55. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

56. All of this occurred without any illegal conduct by plaintiff.

57. Plaintiff was acquitted at trial.

58. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

59. Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiff.

60. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the Constitution of the State of New York.

61. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against All Defendants)

62. The above paragraphs are here incorporated by reference.

63.   Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

64.   Defendants intended to confine plaintiff, plaintiff was conscious of his confinement and did not consent to his confinement.

65.   Plaintiff was acquitted at trial.

66.   Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

67.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

FOURTH CAUSE OF ACTION
Malicious Prosecution
(Against All Defendants)

68.   The preceding paragraphs are here incorporated by reference.

69.   Defendants, acting with malice, initiated a prosecution against plaintiff and caused him to be prosecuted.

70.   Defendants did not have probable cause to initiate proceeding.

71.   The criminal proceedings were terminated in plaintiff's favor.

72.   Plaintiff was acquitted at trial.

73.   Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under 42 U.S.C. §1983, New York State common law, and the New York State Constitution.

74.   As a result of the malicious prosecution implemented by defendants, plaintiff

was damaged.

### FIFTH CAUSE OF ACTION
42 U.S.C. §1983
Excessive Force
(Against Officer Defendants)

75.    The above paragraphs are here incorporated by reference.

76.    By using excessive force against plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

77.    In addition, the officer defendants conspired amongst themselves to deprive plaintiff of his constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

78.    The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

79.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### SIXTH CAUSE OF ACTION
New York State Constitution Art. I § 12
Excessive Force
(Against All Defendants)

80. The above paragraphs are here incorporated by reference.

81. By using excessive force against plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by Article I Section 12 of the New York State Constitution.

82. In addition, the officer defendants conspired amongst themselves to deprive plaintiff of his constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

83. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

84. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the New York State Constitution.

85. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SEVENTH CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

86.  The above paragraphs are here incorporated by reference.

87.  Upon approaching, pushing, punching, throwing plaintiff to the ground, macing, handcuffing and arresting plaintiff, defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

88.  Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

89.  Defendants used excessive and unnecessary force with plaintiff.

90.  Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

91.  As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

EIGHTH CAUSE OF ACTION
Negligence
(Against All Defendants)

92.  The above paragraphs are here incorporated by reference.

93.  Defendants owed a duty of care to plaintiff.

94.  Defendants breached their duty to plaintiff by failing to put their patrol car in park prior to exiting their vehicle.

95.  Defendants, their officers, agents, servants and employees, were responsible for

plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

96.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff's vehicle sustained the damages described above.

NINTH CAUSE OF ACTION
Negligent Hiring & Retention
(Against City Defendant)

97.    The above paragraphs are here incorporated by reference.

98.    Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

99.    Upon information and belief, defendant City, through the NYPD, owed a duty of care, to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

100.  Upon information and belief, defendant officers Haniff and Cummings were incompetent and unfit for their positions.

101.  Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous, especially based on defendant Cummings' long history of civil rights violations.

102.  Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

103.  Upon information and belief, because of the defendant City's negligent hiring

and retention of defendant officers, plaintiff incurred damages described above.

TENTH CAUSE OF ACTION
MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

104. The above paragraphs are here incorporated by reference.

THE CITY OF NEW YORK AND NYPD FAIL TO SCRUTINIZE OFFICERS AND PRECINCTS WITH HISTORIES OF MULTIPLE LAWSUITS FOR CIVIL RIGHTS VIOLATIONS, LIKE THE 71ST PRECINCT, AND INDIVIDUAL DEFENDANTS

105. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2010, New York City paid out $136 million[1] for the fiscal year, compared to 2009, when it paid out more than $117 million, and 2008, when it paid $80 million.[2] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[3] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

106. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus,

---

1 Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

2 Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

3 "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

16

435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

107. In this case, these same two officers have previously been sued, together, for civil rights violations, including Thompson v. City of New York, et al, 10-cv-03603-ARR-SMG (EDNY)(settled for $45,000), which was similarly about a traffic stop, false accusations and excessive force.

108. Defendant Joel Cummings has been previously sued for civil rights violations in the Eastern District of New York in the following FIVE lawsuits, each time represented by Corporation Counsel: Jean Mode v. City of New York, et al, 11-cv-02603-ENV-RML (settled for unknown amount)(false arrest and excessive force), George v. City of New York et al, 13-cv-03273-RRM-SMG (pending)(false arrest based on personal non-criminal complaint by Cummings' girlfriend), Karinna Brown v. City of New York, et al, 08-CV-02784(FB)(MDG) 08-cv-02784-FB-MDG, (settled for $3,500 plus attorney's fees)(false arrest, false summonses), Tilford Murray v. City of New York, et al, 11-cv-00037-JBW-JO (settled for $35,000)(issuing false parking tickets to cover up almost running over plaintiff's daughter and false arrest), Rudolph Shteynberg v. Cummings et al, 11-cv-03583-ENV-JO, (settled unknown amount, false arrest and excessive force).

109. However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

110. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

111. The 71st precinct specifically has an extended history of civil rights violations and, according to the New York City Comptroller's Office fiscal year report for 2011, 58 claims occurred in that precinct for that year. In addition to prior lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding

officers incredible as a matter of law, that a disturbing number of their police officers from the 71st Precinct unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

112. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff, a traffic stop which leads to a false arrest, excessive force, and a cover-up of the officers' vehicle causing an accident.

113. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

114. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the

judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

115. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

116. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.    In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.    Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.     Awarding plaintiff reasonable attorneys' fees, costs and disbursements of

this action; and

D.     Granting such other and further relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

DATED:     June 25, 2013
           Brooklyn, New York

                                            Respectfully yours,

TO:

        ACC Noreen Stackhouse            By: Cynthia Conti-Cook
        City of New York                 Bar# CC0778
        100 Church Street                Stoll, Glickman & Bellina, LLP
        New York, NY 10007               Attorneys for Plaintiff
                                         475 Atlantic Avenue 3rdFloor
                                         Brooklyn, NY 11217
                                         (718) 852-3710
                                         (718) 852-3586
                                         cconti-cook@stollglickman.com